(55 P.3d 924)
No. 87,735

STATE OF KANSAS *ex rel.* Secretary of Social and Rehabilitation Services, Geneva Stacy, as Guardian and Next Friend of CASEY P., a Minor Mother, as Parent and Next Friend of A.P., a Minor Child, *Appellant,* v. JOHNEY STROTKAMP, *Appellee,* and SUSAN STROTKAMP, *Interested Party/Appellee.*

Opinion filed October 11, 2002.

*Kellie E. Hogan,* of Kansas Legal Services, of Wichita, for the appellant.

*Ronald W. Nelson,* of Rose, Nelson & Booth, of Overland Park, for appellee Susan Strotkamp.

Before LEWIS, P.J., JOHNSON, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: This is one of those most unfortunate cases involving visitation conflicts between the mother of a minor child and the grandmother of that child. The grandmother filed a motion for visitation rights, and that motion was granted. The natural mother of A.P., the minor child, appealed the trial court's order.

Casey P., A.P.'s natural mother, was 15 years old when the child was born. After A.P. was born, the Kansas Department of Social and Rehabilitation Services (SRS) filed a petition on behalf of Casey for a declaration of paternity and an order of support for A.P. After the hearing, Johney Strotkamp was found to be the natural father of A.P. and was ordered to pay child support.

A.P. lived with Casey's mother, Donita, in Burns on and off since he was born. The only time he was not with her was when he was with Geneva Stacy, Casey's guardian, and Casey in Hillsboro.

Susan Strotkamp is the paternal grandmother of A.P. She was not told about A.P.'s birth until he was approximately 2 months old and was not allowed to see him until he was 7 or 8 months old. Susan's relationship with A.P. began when Donita wrote her a letter asking her to come and see A.P. She did so and provided diapers, formula, and other baby supplies for A.P. They developed a routine where Susan would pick up A.P. at Donita's house every other weekend when Casey was not home from foster care because it was Susan's belief that Casey needed to spend time with A.P. Susan would pick up A.P. after work on Friday nights and keep him until Sunday afternoons. She took him to the zoo, movies, camping, and fishing, and to get his first haircut. Susan had A.P. in her home on 20 to 30 occasions, and most of the visitations were overnight.

Ultimately, Casey was moved to a foster home in Salina where she was allowed to come home once a month. Susan provided transportation for Casey to come home and see A.P. in Burns at Donita's house. In fact, on a few occasions, Susan drove Casey from her foster care and stayed at Donita's home with A.P. and Casey for a few hours. The arrangement worked well until February 2001, when Susan found out that Casey was not staying with A.P. after Susan dropped her off. Instead, Casey left with a boy whom she was dating. Because Susan believed that Casey should be spending time with A.P., she stopped providing transportation..She had visitation with A.P. a couple of times after this event but was told by Donita that Casey did not want her to see A.P. and she could not pick up A.P. anymore.

In response, Susan filed a motion for grandmother's visitation with A.P. At the hearing, Casey testified she stopped the visitation because A.P. woke up in the middle of the night screaming after having overnight visits with Susan. Donita did not mention anything about A.P.'s screaming at night but conceded that Casey had told her about it. Casey was willing to allow Susan to see A.P. once a month for a couple of hours, supervised. At this point in time, Casey remained in SRS custody because of truancy; she had just failed her GED test which was required in order to be released from SRS custody.

In addition, Johney was charged with the rape of Susan's 14-year-old adopted daughter at about the time the grandparent visitation motion was to be heard. When this incident occurred, Johney remained on probation for the crime of indecent liberties against Casey. At the conclusion of the hearing, the trial court noted that neither Casey nor Johney were unfit. However, he did note that Casey was 16 years old and in SRS custody. He further noted that Johney was either 18 or 19, was in the custody of the Sheriff, and was awaiting trial on serious felony charges which would probably result in his incarceration for some period of time if he was convicted. The court found there was a substantial relationship that existed between Susan and A.P. and it would be in the best interests of the child to continue to have the relationship and stated:

"I can't honestly find at this point in time, that a substantial relationship exists currently. It would appear that it existed for a while. It was allowed to lapse, but with the child two years of age, it should not be at all difficult to reestablish a relationship."

The trial court then awarded Susan visitation with A.P. every other Saturday from 9 a.m. to 5 p.m. Casey filed this appeal.

K.S.A. 38-129 provides:

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests *and when a substantial relationship between the child and the grandparent has been established.*" (Emphasis added.)

On appeal, Casey points out that the trial court found no current substantial relationship between Susan and A.P. and, therefore, had no right to award Susan visitation rights with A.P. This requires that we interpret the statute in question, and we have unlimited review. *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, 654, 16 P.3d 962 (2001).

In Kansas, grandparent visitation cannot be granted under the statute unless it is established that a substantial relationship has been established between the grandparent and the child and that visitation is in the best interests of the child. *Paillet*, 270 Kan. at 653. The statute does not, however, require any timing factor in the relationship such as that it be current, existing, or continuous. In *Paillet*, the court stated:

"The provisions of K.S.A. 38-129(a) are clear and unambiguous and do not provide for an exception to the requirement of finding the existence of a substantial relationship between the grandparents and grandchild. Clearly, the legislature, if it wanted to, could have included such an exception, but it did not do so. It is for the legislature and not the courts to 'draft' an exception to the statute." 270 Kan. at 654.

In line with the language in *Paillet*, we conclude that if the legislature had intended to require an existence of the substantial relationship at the time of or within a certain time frame from the hearing or filing of a motion for visitation, it could have included such language. It did not.

A comparison of our statute with others in the United States is not helpful. Our statute is, by and large, different in language and in intent than others.

We note that the trial court found there was a substantial relationship between Susan and A.P. The court went on to state there was no current relationship at that time but that it had existed in the past and should not be difficult to reestablish. We hold that this finding satisfies the requirement of the statute insofar as finding a substantial relationship has been established. There is no requirement in the statute that the relationship must exist at the time of the hearing or for any length of time whatsoever. We do not believe that the court should read the statute to create additional requirements where none exist. We hold that a finding a

substantial relationship has existed between the grandparent and the grandchild in the past is sufficient to satisfy the statutory requirements.

Casey next argues there was insufficient evidence to support the trial court's finding that Susan's visitation was in the best interests of A.P.

When a challenge is made on the sufficiency of the evidence to support the trial court's finding regarding the best interests of the child, the appellate court reviews the evidence in a light most favorable to the prevailing party below to determine if substantial evidence exists to support the finding. *Paillet*, 270 Kan. at 653.

As we pointed out earlier, two factors are required to be found by the court in order to award grandparent visitation. One of those factors is the establishment of a substantial relationship between a grandparent and the grandchild, and the other factor is what is in the best interests of the child. We have examined the record in this case rather carefully, and we find that the evidence is sufficient to support the trial court's findings in both instances, and the trial court did not err in awarding Susan visitation rights with A.P.

Affirmed.